IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| KLUGE ESTATE WINERY & VINEYARD, LLC,<br>                                                   *Plaintiff,*<br>v.<br>FARM CREDIT OF THE VIRGINIAS, ACA,<br>                                                   *Defendant.* | CASE NO. 3:11-cv-00028<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court upon Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction, filed on April 5, 2011 (docket no. 4). An expedited hearing on the preliminary injunction was held on April 6, 2011, at which both parties were present and afforded the opportunity to put on evidence.[1] At the hearing, I denied Plaintiff's motion. This opinion memorializes my reasons for denying the motion.

### I. BACKGROUND

This is an action brought under the Farm Credit Act of 1971, as amended,[2] 12 U.S.C. § 2001 *et seq.* ("the Act") to enjoin the sale at public auction of certain real property formerly owned by Plaintiff Kluge Estate Winery and Vineyard, LLC ("Plaintiff" or "Kluge"). The real property at issue spans 904 acres in Albemarle County, Virginia, and contains an actively operating winery ("the property"). Kluge owned and operated the winery until its foreclosure in 2010. In 2007, Kluge obtained loans from Defendant Farm Credit of the Virginias, ACA ("Defendant" or "Farm Credit"), under which all of Kluge's assets, including land, buildings,

---
[1] Defendant called four witnesses and entered a brochure marketing the auction into evidence. Plaintiff did not submit any evidence.
[2] The Farm Credit Act was amended by the Agricultural Credit Act of 1987 ("ACA"), enacted on January 6, 1988, and by the ACA's August 17, 1988 amendments.

1

equipment, fixtures, and inventory, were held as collateral in a deed of trust established for the sole benefit of Farm Credit. Farm Credit foreclosed on the property on December 8, 2010, and transferred it to Grand Cru Properties, LLC ("Grand Cru"), a newly formed entity partially owned by Farm Credit. Grand Cru is the current owner of the property.[3] Farm Credit enlisted J.P. King Auction Company, Inc. to assist in arranging the public auction of the property, which was set for April 7, 2011, one day after this Court's hearing on Plaintiff's motion. The property was divided into five separate tracts, each of which was to be sold to the highest bidder; bidders could bid for more than one tract.

Farm Credit is a member-owned cooperative association that provides credit and lending services to borrowers in Virginia and elsewhere. As a Farm Credit system institution, it is established and regulated by the Act. *See* 12 U.S.C. §§ 2071-2098 (organizing the Farm Credit Associations). Farm Credit is subject to § 2219a of the Act regulating the acquisition by a Farm Credit System institution of agricultural real estate as a result of a loan foreclosure. Section 2219a(b), entitled "Application of right of first refusal to sale of property," provides, in pertinent part:

> (1) Election to sell and notification. Within 15 days after an institution of the System first elects to sell acquired real estate, or any portion of such real estate, the institution shall notify the previous owner by certified mail of the owner's right—
>
> (A) to purchase the property at the appraised fair market value of the property, as established by an accredited appraiser; or
>
> (B) to offer to purchase the property at a price less than the appraised value.

---

[3] In its complaint, Plaintiff failed to name Grand Cru as a defendant. Because Farm Credit is a partial owner of Grand Cru, and counsel for Farm Credit also represents Grand Cru, I allowed the expedited hearing to proceed without amendment of the complaint. References in this opinion to Farm Credit should be treated as references to Grand Cru where appropriate. Plaintiff is advised to move for leave to amend the complaint to name the proper defendants going forward.

2

12 U.S.C. § 2219a(b). If the previous owner submits an offer to purchase the acquired property at the appraised price within thirty days after receiving notice of the owner's right, the institution must sell the property to the previous owner. *Id.* § 2219a(b)(2)-(3). If the previous owner offers to purchase the property for less than its appraised value, the institution may accept or reject the offer. *Id.* § 2219a(b)(4).

Section 2219a(d), entitled "Public offerings," provides, in pertinent part, as follows:

> (1) Notification of previous owner. If an institution of the System elects to sell or lease acquired property or a portion thereof through a public auction, competitive bidding process, or other similar public offering, the institution shall notify the previous owner, by certified mail, of the availability of the property. Such notice shall contain the minimum amount, if any, required to qualify a bid as acceptable to the institution and any terms and conditions to which such sale or lease will be subject.
>
> (2) Priority. If two or more qualified bids in the same amount are received by the institution under paragraph (1), such bids are the highest received, and one of the qualified bids is offered by the previous owner, the institution shall accept the offer by the previous owner.

*Id.* § 2219a(d).

Kluge alleges that Farm Credit failed to notify Kluge of the appraised market value of the property and of its right to purchase the property at the appraised value or its right to offer to purchase the property at a price below the appraised market value, in violation of § 2219a(b). Second, Kluge alleges that Farm Credit failed to notify Kluge of the minimum amount, if any, required to qualify a bid as acceptable, in violation of §2219a(d). Third, Kluge alleges that the division of the property into five separate tracts to be auctioned frustrates its right of first refusal and right to match bids under § 2219a.

Kluge also brings a claim under Virginia Code § 54.1-607, which prohibits certain "false, misleading, or deceptive statements" in advertisements for the auction sale of personal or real

3

property.  Kluge alleges that Farm Credit's advertisements for the April 7 auction are false and misleading because they state that the auction will be an absolute auction—one in which the property must pass to the highest bidder regardless of the amount of the highest bid—without mentioning Kluge's right to purchase the property at its appraised price or Kluge's right to match the highest bid at the auction.

Based on these alleged infractions, Kluge requests immediate issuance of an injunction requiring Farm Credit to postpone the auction until it has fully complied with § 2219a of the Act and § 54.1-607 of the Virginia Code.

## II. STANDARD OF REVIEW

The substantive standard for granting a temporary restraining order is the same as the standard for entering a preliminary injunction. *See*, *e.g.*, *Commonwealth of Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994) (applying preliminary injunction standard to a request for temporary restraining order).  A plaintiff seeking preliminary injunctive relief must establish all four of the following elements:  (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) a preliminary injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008); *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346-47 (4th Cir. 2009) (recognizing that *Winter* was in "fatal tension" with Fourth Circuit precedent governing the grant or denial of preliminary injunctions as articulated in *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977), and therefore expressly adopting the *Winter* standard), *vacated on other grounds*, 130 S. Ct. 2371 (2010), *reissued on remand*, 607 F.3d 355 (2010) (reissuing Parts I and II of earlier opinion, 575 F.3d at

345-47, stating the facts and articulating the standard for the issuance of preliminary injunctions).

### III. DISCUSSION

### A. Private Right of Action

The Court's jurisdiction to hear this action is premised upon a federal question involving the Farm Credit Act. The Farm Credit Act contains no express provision giving farmer-borrowers such as Kluge a cause of action to sue for violations of the Act. Defendant contends that no private right of action exists. This question has not been directly addressed in this circuit. In *Payne v. Federal Land Bank of Columbia*, 916 F.2d 179 (4th Cir. 1990), the United States Court of Appeals for the Fourth Circuit issued a decision on the merits after hearing an action brought by a private borrower for relief under the Act. The issue of jurisdiction was not addressed in the Fourth Circuit's opinion or in the district court's opinion from which the appeal was taken. There is no indication that the parties ever raised the issue.

Other circuits have ruled that no private right of action can be implied under the Act or its amendments. *See Wagner v. PennWest Farm Credit, ACA*, 109 F.3d 909, 913 (3d Cir. 1997); *Grant v. Farm Credit Bank of Tex.*, 8 F.3d 295, 296 (5th Cir. 1993); *Bowling v. Block*, 785 F.2d 556, 557 (6th Cir. 1986); *Saltzman v. Farm Credit Servs. of Mid-Am., ACA*, 950 F.2d 466, 469 (7th Cir. 1991); *Zajac v. Fed. Land Bank of St. Paul*, 909 F.2d 1181, 1183 (8th Cir. 1990) (en banc); *Harper v. Fed. Land Bank of Spokane*, 878 F.2d 1172, 1177 (9th Cir. 1989); *Griffin v. Fed. Land Bank of Wichita*, 902 F.2d 22, 24 (10th Cir. 1990); *Smith v. Russellville Prod. Credit Ass'n*, 777 F.2d 1544, 1548 (11th Cir. 1985).

Due to the expedited nature of the hearing, the limited briefing, and the need for an immediate decision on the motion, the Court could not give adequate consideration to this

question. Because the motion can be disposed of on other grounds, I decline to determine whether a private right of action exists at this juncture, and assume, solely for the purpose of the instant motion, that the Court has jurisdiction. I am satisfied, under the authority of *Payne*, that postponing this question for a later point in this litigation is proper.

### B. Temporary Restraining Order and Preliminary Injunction

Kluge has not made a "clear showing" that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief. *See Real Truth About Obama*, 575 F.3d at 351. Kluge lost the property to foreclosure and does not currently own the property. Kluge seeks an opportunity to purchase the property back at its appraised value, as established by an accredited appraiser, or to offer to purchase the property for a price below the appraised value. Testimony at the hearing revealed that the property had been appraised on January 31, 2011 at approximately $17.9 million. Yet Kluge has given this Court no indication that it would be able or willing to purchase the property for that sum. To the contrary, every indication is that Kluge was hoping to pay closer to $10 million, or significantly less.[4] While it is not clear that the January 31 appraisal was established by an accredited appraiser as required by the Act, that appraisal is consistent with previous appraisals that estimated the value of the property at over $20 million, and is consistent with the price paid at the foreclosure auction of $19 million. Thus, I have good reason to believe the January 31 appraisal at least provides a ballpark figure, handy for a rough comparison. It is safe to conclude that Kluge would be unable to purchase the property for $17.9 million. Moreover, there is no evidence that Farm Credit would accept an offer to purchase the property at a price substantially less than the appraised value.

---

[4] In prior discussions about the property, Kluge urged Farm Credit to accept $10 million for the property. At the hearing, counsel for Kluge stated that if the appraised value of the property is $3 million or $4 million, certainly Kluge would be interested in discussing the purchase of the property.

In any case, Kluge has the opportunity to purchase the property at the public auction by exercising its right to match the highest bid. The high bid may be higher or lower than the appraised value. Without knowing in advance the amount of the high bid at auction, I am unable to conclude that Kluge is likely to suffer irreparable harm if the auction is allowed to proceed.

An additional factor supporting my decision is the possibility of obtaining relief by filing an administrative complaint with the Farm Credit Administration ("FCA"), which has extensive enforcement powers. *See* 12 U.S.C. §§ 2261-2274. The FCA has the power to issue cease and desist orders against any institutions that violate or are about to violate the statute or applicable regulations, *id.* § 2261, as well as the power to suspend or remove Farm Credit System officers and directors, *id.* § 2264. The FCA is further empowered to assess civil sanctions to enforce these provisions. *Id.* § 2268(a).

Kluge also has not demonstrated that the balance of equities tips in its favor. Farm Credit put on evidence that showed it will likely suffer a substantial loss if the public auction is postponed. The majority of the engagement fee of over $163,000 it paid to J.P King Auction Company has been spent on arranging the auction and advertising it to potential bidders. If the auction is rescheduled, the greater part of that sum would be lost, and a similar amount of money would have to be spent to advertise the rescheduled auction.

As a result of advertising the auction in several media outlets and providing tours of the property to thirty-nine separate groups, serious interest in the property has been generated. At the time of the hearing, several potential bidders were already en route to the auction site from distant locales. The Court heard testimony that when an auction is canceled or postponed, the same level of interest in the originally scheduled auction is rarely generated for the rescheduled auction; many of the potential buyers simply do not return. Thus, postponement of the auction

entails at least the risk that the highest bid at the rescheduled auction will be lower than what would have been bid on April 7.

As the property is an active winery, Farm Credit also faces potential losses from operating the winery until the property is sold at auction. If the auction date is set back, and Farm Credit chooses to continue operating the winery, it estimates it will need to spend $0.5 million a month in operating costs to keep the winery in operation. It is highly unlikely that those costs would be offset by profits, as the winery was losing on average about $5 million a year before foreclosure, and Farm Credit does not anticipate any change in its profitability. If Farm Credit foregoes operating the winery until the property is sold, the value of the property is likely to fall. Other operational problems would emerge from postponement of the auction. To provide one example, a reserve of wine owned by Farm Credit is currently stored in tanks that are not owned by Farm Credit, and that are scheduled to be auctioned on April 8, 2011. Farm Credit would incur substantial costs to transfer and store the wine once the tanks are sold. In another example, decisions about managing and pruning the vines—which affect the shape of the harvest in the fall and the wine that can be produced from it—need to be made this spring; those decisions are better left to the future operator of the winery, rather than to Farm Credit, which has no expertise in winery management.

By contrast, Kluge has not shown that it would incur monetary harm if preliminary relief is not granted. Even if Kluge is denied its alleged right to purchase the property at its appraisal price, it has the opportunity to match the highest bid at the public auction, which may be lower than the appraisal price.

In sum, Kluge has not made a showing sufficient to warrant the extraordinary remedy of a preliminary injunction.

## IV. Conclusion

For the reasons stated above, I denied Plaintiff's motion for a temporary restraining order and preliminary injunction at the hearing on the motion.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this __13th__ day of April, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE